UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIZABETH GIL,

        Plaintiff,

v.                                              Case No:   6:20-cv-1850-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

## MEMORANDUM OF DECISION[1]

Elizabeth Gil ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. Doc. No. 1. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings. Doc. No. 23, at 7, 16, 20. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 17, 19, 22.

the final decision of the Commissioner should be affirmed. *Id.* at 20. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY.

On August 14, 2017, Claimant filed an application for disability insurance benefits, alleging a disability onset date of October 18, 2012. R. 15, 199–200.[2] Claimant later amended her disability onset date to November 10, 2016. R. 46, 222. Claimant's application was denied initially and on reconsideration, and she requested a hearing before an ALJ. R. 119, 123, 129–30. A hearing was held before the ALJ on October 3, 2019, at which Claimant was represented by an attorney. R. 37–66. Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 15–28. Claimant sought review of the ALJ's decision by the Appeals Council. R. 7, 196–98. On August 7, 2020, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

---

[2] The "Application Summary for Disability Insurance Benefits" states that Claimant applied for benefits on August 15, 2017, but according to the ALJ's decision, Claimant filed the application on August 14, 2017. *Compare* R. 15, *with* R. 199. For consistency, and because the application date is not dispositive of this appeal, the Court utilizes the application date stated by the ALJ: August 14, 2017. This is the only application at issue in this appeal. *See* R. 42–46 (discussing other applications previously filed by Claimant).

## II. THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a). R. 15–28.[4] The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2017. R. 17. The ALJ further concluded that Claimant had not engaged in substantial gainful activity from the November 10, 2016 amended alleged onset date through her date of last insured. R. 17. The ALJ found that Claimant suffered from the following severe impairments: degenerative disc disease of the lumbar spine, rectovaginal fistula with repair, depression, anxiety, post-traumatic stress disorder (PTSD), borderline personality disorder, and alcohol

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 23. Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

use disorder. *Id.* But the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18–20.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] except:

> [T]he the claimant (1) could occasionally climb stairs and ramps; (2) could never climb ladders or scaffolds; (3) could occasionally balance, stoop, kneel, crouch and crawl; (4) must have avoided concentrated exposure to slippery, wet surfaces; and (5) must have avoided concentrated exposure to hazards such as unprotected heights and moving mechanical parts. Further, the claimant (1) could understand, remember and carry out simple instructions; (2) could have occasional interaction with supervisors, coworkers and the public; (3) could only make simple, work-related decisions; (4) could only tolerate occasional change in work location; and (5) could not work at a strict production rate such as the rate required to work on an assembly line.

R. 20.

---

[5] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work, which included work as a sales clerk. R. 26. However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include router, micro film mounter, and collator operator. R. 26–27. Accordingly, the ALJ concluded that Claimant was not under a disability from her alleged disability onset date through the date of last insured. R. 28.

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.   ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error: (1) the ALJ failed to provide sufficient justification for finding the opinion of consultative examiner Dr. Alex Perdomo, M.D. unpersuasive; and (2) the ALJ erred in failing to include in the RFC determination all of the mental health limitations that are supported by the record. Doc. No. 23. Each issue will be addressed in turn.

A.   <u>Dr. Perdomo</u>.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In

- 6 -

determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. § 404.1545(a)(3).

Claimant filed her application for disability insurance benefits on August 14, 2017. R. 15, 199–200. Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[6] The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

---

[6] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c).

20 C.F.R. § 404.1520c(a). The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* § 404.1520c(b)(2).[7]

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* § 404.1520c(b)(1). "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)). *See also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

---

[7] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

In this case, Claimant's argument centers on the ALJ's consideration of the medical opinions of Dr. Perdomo. Doc. No. 23, at 7–9. On March 23, 2017, Dr. Perdomo conducted a one-time consultative examination regarding Claimant. R. 406–08. Dr. Perdomo documented his examination findings and recommended as follows:

> Patient would benefit from more aggressive physical therapy and home exercise program for lower back conditioning. MRI of the lumbosacral spine will be helpful for further evaluation. She can stand and walk for 3-4 hours a day in an eight-hour workday with normal breaks. She can sit for 3-4 hours a day in an eight-hour workday with normal breaks. She can occasionally lift and carry, but should limit the weight lifting to no more than 10 lbs. She should also avoid repetitive bending, stooping or crouching. No assistive device for ambulation was required, or manipulative limitations were seen. She needs adequate continuity of care for proper management of her other chronic disease.

R. 407–08.

In the decision, the ALJ provided a detailed recitation of Dr. Perdomo's examination findings. R. 23. The ALJ thereafter summarized Dr. Perdomo's opinions regarding Claimant's functional impairments and made findings pertinent thereto as follows:

> In March 2017, Alex Perdomo, M.D., the consultative examiner, opined the claimant could sit, stand and walk for 3-4 hours a day in an eight-hour workday with normal breaks (Exhibit 10F). I find this opinion is not persuasive. First, there is no support, explanation or rationale for the opined-to limitations. For example, there is no explanation as to why the claimant can only sit for 3 to 4 hours in a workday. This lack of a supporting rationale or explanation undermines the opinion's persuasiveness. Second, the opinion is not consistent with the results

> of the consultative examination. For example, the opinion the claimant only sit for 3 to 4 hours in a workday does not appear consistent with the results of the consultative examination. As summarized above, the consultative examination showed normal range of motion and muscle strength throughout the extremities, no focal neurological deficits and that the claimant was observed to have no difficulty ambulating, siting (*sic.*) or getting on an[d] off the examination table. Thus, it is unclear why the claimant would be limited to sitting for 3 to 4 hours in a workday and since there is no supporting rationale one is left to speculate what basis there is for this opinion. Further, the consultative examination occurred 10 days after the claimant underwent the fistula repair and colostomy and it is possible that this impacted the claimant's trunk range of motion testing and Dr. Perdomo's opinion (Exhibits 11F-13F, 18F-20F, 38F). In short, I find this opinion is not well supported, not consistent with the evidence and not persuasive.

R. 24. Thus, the ALJ found Dr. Perdomo's opinions regarding Claimant's functional limitations unpersuasive for the following reasons: (1) lack of explanation or supporting rationale for the limitations; (2) the limitations are inconsistent with the results of Dr. Perdomo's examination; and (3) the temporal proximity of Dr. Perdomo's examination to a fistula repair and colostomy and any effects that had on Dr. Perdomo's opinions and "trunk range of motion testing." *See id.*

In the Joint Memorandum, Claimant contends that the ALJ's findings regarding Dr. Perdomo's opinions are not supported by substantial evidence. Doc. No. 23, at 8. More specifically, and contrary to the ALJ's findings, Claimant contends that Dr. Perdomo provided a sufficient explanation for the functional limitations he assessed, citing results from Dr. Perdomo's examination in support

(such as Claimant's chronic back pain and severe lumbar spine pain, pain with flexion of both hips, decreased lumbar range of motion, and positive straight leg raising in both seated and supine positions). *Id.* at 8–9.  Claimant also argues that the ALJ erred in finding Dr. Perdomo's opinions unpersuasive because the consultative examination occurred shortly after Claimant's fistula repair surgery and colostomy, given that Claimant's rectovaginal fistula is a severe impairment, limitations from that condition are relevant to Claimant's functional limitations, and Claimant's post-surgical problems persisted for a significant period.  *Id.* at 9. In response, the Commissioner contends that the ALJ properly considered Dr. Perdomo's opinions under the new regulations.  *Id.* at 9–15.

Upon consideration, Claimant's first assignment of error is unpersuasive, as, contrary to Claimant's arguments, the ALJ's findings regarding Dr. Perdomo's opinions are supported by substantial evidence.[8]  Specifically, as the ALJ notes,

---

[8] The Court notes that Claimant does not argue in the Joint Memorandum that the ALJ failed to comply with the new Social Security regulations in evaluating Dr. Perdomo's opinions.  *See* 20 C.F.R. § 404.1520c.  Instead, Claimant's argument is limited to attacking the precise reasons that the ALJ found Dr. Perdomo's opinions unpersuasive, arguing that the ALJ's findings are not supported by substantial evidence and that the ALJ erred in relying on the fact that the consultative examination occurred shortly after Claimant's fistula repair surgery and colostomy.  *See* Doc. No. 23, at 7–9.  Accordingly, the analysis in this Memorandum of Decision is so limited.  *See Borroto v. Comm'r of Soc. Sec.*, No. 2:17-cv-673-FtM-99CM, 2019 WL 488327, at *1 (M.D. Fla. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 290599 (M.D. Fla. Jan. 23, 2019) ("Any issue not raised by Plaintiff on appeal is deemed to be waived." (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."))).  *See also Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) ("There is no burden upon the district

although Dr. Perdomo opined that Claimant could sit, stand, and walk for only 3-4 hours a day in an 8-hour workday, Dr. Perdomo provides no explanation for these opined limitations in his assessment. *See* R. 406–09. And, as the ALJ notes, Dr. Perdomo's examination findings included normal range of motion and muscle strength throughout the extremities, as well as observations that Claimant had no difficulty ambulating, sitting, or getting on an off the examination table. *See* R. 406–07. These findings could logically be viewed as inconsistent with Dr. Perdomo's opined-to limitations regarding sitting, standing, and walking.[9]

The Court also finds no error in the ALJ's finding that because the consultative examination occurred within short proximity to Claimant's vaginal fistula repair and colostomy, there is a possibility that impacted Dr. Perdomo's testing and opinions. *See* R. 24. Notably, Dr. Perdomo acknowledged the recent

---

court to distill every potential argument that could be made based on the materials before it . . . ." (quoting *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

[9] In the Joint Memorandum, Claimant suggests that Dr. Perdomo provided sufficient support for the opined functional limitations, contrary to the ALJ's findings. Doc. No. 23, at 9. Upon consideration, the Court rejects this argument because, as the ALJ found, Dr. Perdomo did not provide the explicit explanation that Claimant suggests, and Dr. Perdomo does not tie the proposed functional limitations to any particular examination findings. *See* R. 406–09. Moreover, Claimant is not arguing that the ALJ misstated Dr. Perdomo's findings, nor does Claimant even address the ALJ's finding that Dr. Perdomo's opined-to limitations are inconsistent with certain examination findings, such as no difficulty ambulating, sitting, or getting on and off the examination table. *See* Doc. No. 23, at 8–9. Because the ALJ's finding that Dr. Perdomo's examination findings were inconsistent with the opined-to functional limitations is supported by the record, the Court finds no reversible error.

fistula repair surgery in his assessment. *See* R. 406, 407. And Claimant points to no legal authority in the Joint Memorandum demonstrating that the ALJ errs in finding a medical opinion less than fully persuasive due to a recent surgery that could have affected the opined-to limitations. *Cf. Vagnier v. Comm'r of Soc. Sec.*, No. 2:14-CV-2376, 2018 WL 5919045, at *7 (S.D. Ohio Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 396410 (S.D. Ohio Jan. 31, 2019) (finding, under the older Social Security regulations, that the close temporal proximity between a surgery and a medical opinion constituted good cause to discredit the restrictive opinion from the medical professional); *Abrahamson v. Colvin*, No. 2:14-CV-00308-RHW, 2016 WL 498067, at *9 (E.D. Wash. Feb. 8, 2016) (similar).

Instead, the crux of Claimant's contention is that even though the consultative examination occurred in close proximity to the surgery, the record demonstrates that Claimant's post-surgical problems persisted, such as that she had an ileostomy from March 2017 until it was reversed in July 2017, and she also developed an infection causing abdominal pain. Doc. No. 23, at 9. Thus, according to Claimant, it was reasonable for Dr. Perdomo to conclude that she could not lift more than 10 pounds nor stand or walk for more than 3–4 hours in a workday. *Id.*

On review, however, the ALJ's decision reflects that the ALJ considered these same records cited by Claimant in determining Claimant's RFC. *See* R. 23, 26

(ALJ's decision noting that after the surgery, Claimant experienced some pain, but her pain improved with treatment and healing; that Claimant had an ileostomy for three months that was closed in July 2017; that Claimant was treated for an infection in July 2017; by August 2017 the wound was healing with no signs of infection; and the record did not demonstrate any follow-up treatment until after the date last insured).  Moreover, the ALJ also considered records demonstrating that Claimant's condition improved following the fistula repair surgery.  *See* R. 25, 26.  And the ALJ stated that she accounted for Claimant's surgical history and considered its possible limitations with regard to Claimant's "ability to move her abdomen and lift and carry objects."  *See* R. 26.  Consequently, absent authority demonstrating that the ALJ errs in discounting a medical opinion for its close proximity to a surgery that could affect the opined-to limitations, Claimant has not established reversible error.[10]

Based on the foregoing, Claimant's first assignment of error is unpersuasive.

---

[10] It seems that Claimant is really asking the Court to reweigh the evidence in an effort to reach a different outcome, which is not within this Court's authority.  Rather, the Court is limited to determining whether the ALJ's decision is supported by substantial evidence, regardless of whether the Court agrees with that decision.  *See Phillips*, 357 F.3d at 1240 n.8 (alteration in original) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" (quoting *Bloodsworth*, 703 F.2d at 1239)).

B.   Mental Health Limitations.

Claimant next argues that the ALJ's RFC determination fails to account for all of her mental health limitations and/or symptoms. Doc. No. 23, at 16. As discussed above, the RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). As it relates to mental abilities, the Social Security regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

*Id.* § 404.1545(c).

Here, Claimant argues that the ALJ's RFC determination fails to account for all of her mental health limitations and/or symptoms because she consistently reported symptoms such as anxiety, restlessness, difficulty concentrating, irritability, depression, racing thoughts, and panic attacks, and some status examinations demonstrated that she was depressed, agitated, and had constricted range of affect. Doc. No. 23, at 16. However, Claimant acknowledges that there

were some examinations where her mood was normal. *Id.* But according to Claimant, the overall evidence demonstrates periods where her anxiety, depression, and PTSD would have impeded her ability to keep a regular work schedule. *Id.* at 16–17. Claimant also argues that the ALJ's finding that treatment notes showed her symptoms were "generally improved and stable" is not supported by substantial evidence, and the ALJ failed to consider how her mental health limitations would negatively affect her work attendance and ability to remain on task. *Id.* at 17–18.

The Commissioner disagrees, arguing that the ALJ properly accounted for Claimant's impairments in the RFC determination, properly considered the record as a whole, which included abnormal findings and both good and bad days, and imposed limitations that were supported by the record. *Id.* at 18–20.

Upon consideration, Claimant has not demonstrated that the ALJ erred in considering her mental health symptoms or formulating the RFC in this regard. Claimant appears to be suggesting that the ALJ failed to consider that "Plaintiff's anxiety, depression, and PTSD would have impeded her ability to keep a regular work schedule." *See id.* at 16–17. But a review of the decision demonstrates that the ALJ reviewed Claimant's mental health records, several of which are cited by Claimant, in assessing Claimant's impairments and formulating Claimant's RFC. *See* R. 18, 19, 25, 26 (discussing mental health records in addressing whether

Claimant's impairments met or equaled a listed impairment and in formulating Claimant's RFC, which included records from Exhibits 22F and 36F).[11]  Notably, in formulating the RFC, the ALJ limited Claimant to understanding, remembering, and carrying out simple instructions; only occasional interaction with supervisors, coworkers, and the public; making simple, work-related decisions; tolerating only occasional change in work location; and precluding work at a strict production rate.  R. 20.  In the Joint Memorandum, Claimant fails to point to any record evidence demonstrating that the symptoms from her mental health impairments cause greater restrictions that those already found by the ALJ.  *See* Doc. No. 23, at 16–18.  *See generally Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

---

[11] In particular, at step three of the sequential evaluation process, the ALJ considered several treatment records with regard to Claimant's mental impairments and assessing her limitations as to whether the mental impairments met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  R. 18–19.  Although the step three determination is not an RFC assessment, the ALJ noted that the RFC assessment is more detailed and ultimately included the ALJ's findings regarding the step three mental functional analysis.  R. 19–20.

Moreover, in considering Claimant's mental health limitations, the ALJ found assessments by two state agency psychological consultants "not persuasive" because the consultants did not adequately consider Claimant's self-reports of psychological symptoms and the combined effects of her mental impairments.  R. 25.  In reaching this determination, the ALJ summarized records demonstrating Claimant's self-mutualization and excessive alcohol use, as well as evidence suggesting that Claimant "has more than minimal limitations in adapting or managing oneself."  *Id.*  The ALJ also found that the evidence suggested that the behavior was not isolated.  *Id.*

To the extent that Claimant focuses on the isolated statement by the ALJ that "behavioral health treatment records reflect [Claimant's] symptoms were generally improved and stable with treatment," the records cited by the ALJ generally support this finding. *See* R. 26 (citing Exhibits 8F (R. 387–94), 22F (R. 593–607), 23F (R. 608–26), 32F (R. 714–35)). Specifically, although some of the records indeed demonstrate symptoms of anxiety, depression, or other mental health symptoms, the treatment notes also include several normal and/or stable examination findings. *See* R. 390, 393, 595, 599, 603, 613, 617–18, 622, 625, 716, 722, 727, 731. Because the ALJ's findings are supported by the record, Claimant has not demonstrated reversible error. *See, e.g.*, *Funk v. Kijakazi*, No. 3:20-cv-460-PDB, 2021 WL 4520502, at *4 (M.D. Fla. Oct. 4, 2021) (rejecting argument that the ALJ's finding that mental health examinations were generally benign was inconsistent with treatment notes where the ALJ addressed the medical evidence in detail, and although the treatment notes showed that the claimant was anxious, blunted, sad, angry, irritable, anxious, or depressed, the ALJ's finding that the claimant had no more than moderate symptoms was supported by substantial evidence, including many treatment notes showing normal findings).[12]

---

[12] The Court notes that in the Joint Memorandum, Claimant points to *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021) for the proposition that mental disorders are characterized by an unpredictable fluctuation in symptoms; patients have both good days and bad days; and that an ALJ's evaluation regarding mental impairments should focus on the totality of the evidence, rather than a snapshot from a

For these reasons, Claimant's second assignment of error is unpersuasive.

## V. CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 14, 2022.

*[signature: Leslie Hoffman Price]*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

single treatment visit. Doc. No. 23, at 16. While the Court has no quarrel with these general propositions, the Court finds *Simon* distinguishable on its facts. Specifically, that discussion in *Simon* related to the ALJ's rejection of the opinion of a treating physician, while in this case, Claimant is arguing that the ALJ improperly considered the record evidence as a whole with relation to the symptoms of Claimant's mental impairments. Moreover, in *Simon*, the ALJ failed to discuss the claimant's most serious symptoms of mental impairments in the decision, "which verge[d] on a blatant mischaracterization of [the] medical records." *Simon*, 7 F.4th at 1106. Here, to the contrary, Claimant is not really arguing that the ALJ failed to consider pertinent medical records (indeed, as discussed, many of the records on which Claimant relies are cited by the ALJ in the decision). Instead, Claimant appears to merely disagree with the ALJ's conclusions based on those medical records. *See* Doc. No. 23, at 16–18. But, because the record demonstrates that the ALJ considered Claimant's condition as a whole, the Court rejects Claimant's second assignment of error.